David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ADIE, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 18-cv-2537 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| BLACK BOX CORPORATION, JOEL T. TRAMMELL, RICHARD L. CROUCH, CYNTHIA J. COMPARIN, RICHARD C. ELIAS, THOMAS G. GREIG, AND JOHN S. HELLER, | 1. **VIOLATIONS OF SECTION 14(E) OF THE EXCHANGE ACT OF 1934**<br>2. **VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT** |
| Defendants. | |

James Adie ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Black Box Corporation ("Black Box" or the "Company") against Black Box and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Black Box, the "Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of

1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e) and 78t(a), and Item 1015 of Regulation M-A, 17 C.F.R. § 229.1015(b)(4) ("Item 1015"), and to enjoin the expiration of a tender offer (the "Tender Offer") by AGC Networks Pte. Ltd. ("AGC") through Host Merger Sub Inc., a Delaware corporation and a wholly owned subsidiary of BBX Inc.[1] ("Merger Sub"), to acquire all of the issued and outstanding shares of Black Box (the "Proposed Transaction").

2.      On November 11, 2018, Black Box, AGC, Parent, BBX Intermediate, and Merger Sub entered into an Agreement and Plan of Merger (the "Merger Agreement"), whereby each stockholder of Black Box common stock will receive $1.08 per share in cash (the "Offer Price").

3.      On November 21, 2018, in order to convince Black Box stockholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC.  In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) financial projections for the Company; (ii) the valuation analyses performed by the Company's financial advisor, Raymond James & Associates, Inc. ("Raymond James"), in support of their fairness opinion; and (iii) the potential conflict of interest Raymond James faced as a result of its prior dealings with Black Box.

4.      The Tender Offer is scheduled to expire at midnight (*i.e.*, one minute after 11:59 p.m.), New York time, on December 19, 2018 (the "Expiration Date").  It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's stockholders prior to the Expiration Date so they can properly determine whether to tender their shares.

5.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Black Box stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

---

[1]    BBX Inc. ("BBX Intermediate") is a Delaware corporation and a wholly owned subsidiary of BBX Main Inc., a Delaware corporation and a wholly owned subsidiary of AGC ("Parent").

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state."  *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court."  *Id.* at 1316.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.   Indeed, Black Box maintains a branch office in Fontana California which is in this District, where the VP of the Company's West Region and the Area Manager both conduct business for the Company.

**PARTIES**

9.     Plaintiff is, and at all relevant times has been, a stockholder of Black Box.

10.     Defendant Black Box is a Delaware corporation with its principal executive offices located at 1000 Park Drive, Lawrence, Pennsylvania 15055 with a branch regional office at 7950 Cherry Ave, Fontana, CA   92335. The Company is a leading technology solutions provider dedicated to helping customers build, manage, optimize, and secure their IT infrastructure.  Black Box common stock is traded on the NASDAQ under the ticker symbol "BBOX."

11.     Defendant Joel T. Trammell is, and has been at all relevant times, a director of

3

Black Box, and currently serves as the Company's President and Chief Executive Officer.

12.     Defendant Richard L. Crouch is, and has been at all relevant times, a director of Black Box.

13.     Defendant Cynthia J. Comparin is, and has been at all relevant times, a director of Black Box.

14.     Defendant Richard C. Elias is, and has been at all relevant times, a director of Black Box.

15.     Defendant Thomas G. Greig is, and has been at all relevant times, a director of Black Box.

16.     Defendant John S. Heller is, and has been at all relevant times, a director of Black Box.

17.     The defendants identified in paragraphs 11 through 16 are collectively referred to herein as the "Individual Defendants" and/or the "Board," collectively with Black Box the "Defendants."

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Black Box (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

19.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of the close of business on November 20, 2018, there were 15,237,521 shares of Black Box common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public stockholders of Black Box will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

4

CLASS ACTION COMPLAINT

i)      whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Recommendation Statement, in violation of Section 14(e) of the Exchange Act;

ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement;

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.    Company Background and the Proposed Transaction**

20.    Black Box is a leading digital solutions provider dedicated to helping customers design, build, manage and secure their IT infrastructure.  The Company delivers high-value products and services through its global presence and approximately 3,000 team members.

21.     AGC is the client's trusted global technology integrator to architect, deploy, manage and secure their IT environment through customized solutions and services that accelerate their business.  AGC partners with the world's best brands in Unified Communications, Data Center & Edge IT, Cyber Security (CYBER-i) and Digital Transformation & Applications.

22.     On November 11, 2018, Black Box and AGC issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

### AGC NETWORKS TO ACQUIRE BLACK BOX, CREATING A SIGNIFICANT GLOBAL TECHNOLOGY SOLUTIONS PROVIDER

*Expands Offerings, Scale and Geographic Reach to Service Global Enterprise Clients*

*Offer Price Represents a 24% Premium Over Most Recent Closing Price on Friday, November 9, 2018*

**DALLAS, MUMBAI, SINGAPORE and PITTSBURGH, November 11, 2018** – A wholly-owned subsidiary of global solutions integrator AGC Networks Ltd (BSE/NSE: AGCNET), AGC Networks Pte. Ltd. in Singapore and Black Box Corporation (NASDAQ:BBOX) announced today that they have entered into a definitive merger agreement under which AGC Singapore would acquire all the outstanding shares of Black Box for $1.08 per share in cash, subject to customary closing conditions and regulatory approvals. The Black Box Board of Directors unanimously approved the merger agreement following a thorough review of the full range of available strategic, financial and capital structure alternatives, which Black Box commenced and announced on February 6, 2018. The transaction is expected to close prior to the end of the calendar year.

The combination with Black Box will provide a substantial increase in AGC's presence and offerings in North America. In addition, AGC will enhance its footprint in providing technologies and services throughout six continents. The acquisition will be significant for AGC, expected to add over $600 million in annual revenue and approximately 3,000 team members serving clients worldwide.

"We have known Black Box for many years and believe that its skilled teams and strong client relations with world-class enterprises and partners will allow us to better serve our global clients," said Sanjeev Verma, Executive Director and CEO of AGC Networks. "The merger of our two companies will create a unique organization that has the scale to deliver world-wide technical solutions to the largest organizations."

"We were looking for a partner that could provide us with the resources to grow our services and products businesses in a way that benefitted clients and employees," said Joel Trammell, CEO of Black Box. "As we visited in depth with the AGC team, it became obvious that the fit was very strong and that the combination would make our company more exceptional. I look forward to working with Sanjeev and his team to build a world class global technology services company."

6

CLASS ACTION COMPLAINT

Under the terms of the merger agreement, an indirect wholly owned U.S. subsidiary of AGC Singapore will commence a tender offer to purchase all of the outstanding shares of Black Box common stock for $1.08 per share in cash. Upon the successful completion of the tender offer, the U.S. subsidiary of AGC Singapore would acquire all remaining shares of common stock not tendered in the offer for $1.08 per share through a second-step merger. The tender offer and the second-step merger are subject to customary conditions, including the tender of a majority of the outstanding shares of Black Box common stock. The U.S. subsidiary of AGC Singapore is financing the merger through a combination of equity and debt. Pathlight Capital will serve as administrative agent for the senior credit facilities.

**Strategic Rationale**

The transaction brings together two global IT solutions providers that share a "client focus" approach and are committed to accelerating their clients' business. AGC brings its strong presence in India, the Middle East and Pacific Rim to complement Black Box's services focus in the Americas and Europe, while also enhancing the presence in other global markets. Both companies provide full managed services capabilities in Unified Communications and Collaboration, Cloud, Data Center and Edge Technologies. AGC adds its expertise in digital applications and cybersecurity to Black Box's strong infrastructure and mobility background. The transaction will enhance their technology vendor partners' reach in global markets, verticals and clients. The Black Box products business will continue to offer its full portfolio of products directly and through channel partners.[2]

## II.   The Recommendation Statement Is Materially Incomplete and Misleading

23.     On November 21, 2018, the Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Black Box's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Tender Offer.

24.     First, the Recommendation Statement fails to disclose material information concerning the potential conflict of interests Black Box's financial advisor, Raymond James, faced as a result of its prior dealings with the Company.

25.     Specifically, the Recommendation Statement states:

Raymond James has provided certain services to the Company in the previous two years, including financial advisory services related to the divestiture of its Federal

---

[2]     Black Box Corporation, Current Report (Form 8-K), at Exhibit 99.1 (Joint Press Release, issued November 11, 2018, by Black Box Corporation and AGC Networks Limited.) (November 13, 2018).

CLASS ACTION COMPLAINT

Business as well as the Second Amendment to its Credit Agreement, dated June 29, 2018, **for which it has been paid fees by the Company**.

Recommendation Statement at 63-64 (emphasis added). Consequently, the Recommendation Statement fails to quantify how much compensation Raymond James received for the fairness opinion that it rendered in connection with the Proposed Transaction.

26.     Disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates is required pursuant to Item 1015. Accordingly, the failure to quantity compensation details from Raymond James' previous dealings with Black Box renders the Recommendation Statement and Raymond James' fairness opinion materially incomplete and misleading, and in violation of 17 C.F.R. § 229.1015(b)(4).

27.     Such information is also material to Black Box stockholders. Indeed, it is imperative for stockholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed merger must be carefully considered in assessing how much credence to give its analysis. The relationships between investment banks and corporate management can run deep, and an investment bank often has business with the corporation and its management that spans more than one transaction. Where an investment bank is providing a fairness opinion that involves long-standing clients, it may be influenced to find a transaction fair to avoid irritating management and other corporate actors who stand to benefit from the transaction, as this will ensure future lucrative business. There is no rule that conflicts of interest must be disclosed only where there is evidence that the financial advisor's opinion was actually affected by the conflict.

28.     Put simply, a reasonable stockholder would want to know an important economic motivation of the financial advisor employed by a board to opine on the fairness of the consideration to offered to stockholders, when that motivation could rationally lead that advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to him, given his overall economic interest, than ensuring stockholders actually receive a truly fair price.

CLASS ACTION COMPLAINT

29.     Second, the Recommendation Statement fails to disclose the original iteration of the Company's financial projections.

30.     Specifically, the *Certain Company Unaudited Prospective Financial Information* section of the Recommendation Statement states:

> The Company Projections are derived from the Company's fiscal 2019 annual operating plan, **prepared by the Company in April 2018 in the ordinary course of its annual strategic planning process**. In August 2018, … the Company developed the Company Projections to take into account the Company's recent performance, customer and vendor developments, and the prospective financial impact of the sale of the Federal Business, and the effect of those matters on the near-, medium- and long-term results of operations of the Company.

*See* Recommendation Statement at 54-55 (emphasis added).   In other words, Company management prepared **two** sets of projections: the initial iteration in April 2018, and a later updated set in August 2018.

31.     However, the Recommendation Statement selectively discloses **only one set of projections.**

32.     Numerous courts have championed the importance of management based financial projections because a company's management has unique insight into their firm's future and the value of the company that the market does not.   Stockholders cannot hope to replicate management's inside view of the Company's prospects.   The established case law shows the importance (and, hence, materiality) of financial projections to stockholders' decision-making.

33.      By electing to disclose some of Black Box's projections, Defendants' obligated themselves to speak the whole truth regarding Black Box's projections by providing complete and accurate projections because if a proxy discloses financial projections and valuation information, such projections **must be complete and accurate**, rather than cherry-picking favorable financial metrics to disclose.   The question here is not the duty to speak, but liability for not having spoken enough.   With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—**but it may not choose half-truths.**

CLASS ACTION COMPLAINT

34.     The Recommendation Statement describes Raymond James' fairness opinion and the various valuation analyses performed in support of their opinion.  However, the description of Raymond James' fairness opinion and their analyses fails to include key inputs and assumptions underlying the analyses.  Without this information, as described below, Black Box's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Raymond James' fairness opinion in determining whether to tender their shares in the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Black Box's common stockholders.

35.     With respect to Raymond James' *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following key components used in their analysis: (i) the inputs and assumptions underlying the calculation of the perpetual growth rates ranging from 1.5% to 2.5%; (ii) the range of terminal values for Black Box in 2022; (iii) the inputs and assumptions underlying the calculation of the discount rates ranging from 16.8% to 18.8%; (iv) the resulting range of Black Box's present values; (v) the Company's then-current capitalization; (vi) the number of fully-diluted shares outstanding; and (vii) the range of present values per share of Black Box common stock.  *See* Recommendation Statement at 62.

36.     These key inputs are material to Black Box's common stockholders, and their omission renders the summary of Raymond James' *Discounted Cash Flow Analysis* incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow ("DCF") analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of*

10

*dollars*…. This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Black Box stockholders cannot evaluate for themselves the reliability of Raymond James' DCF analysis, make a meaningful determination of whether the Offer Price reflects the true value of the Company or was the result of Raymond James' unreasonable judgment, and make an informed decision regarding whether to tender their shares in the Proposed Transaction.

37.    With respect to Raymond James' *Selected Companies Analysis*, the Recommendation Statement fails to disclose the individual multiples Raymond James calculated for each of the companies utilized.  *See* Recommendation Statement at 59-60.  The omission of these multiples renders the summary of this analysis and the calculated enterprise value and adjusted EBITDA multiples materially misleading.  A fair summary of the *Selected Companies Analysis* requires the disclosure of the individual multiples for each company; merely providing the range that a banker applied is insufficient, as Black Box stockholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to make the Company's multiples and the Offer Price appear more

38.    Similarly, with respect Raymond James' *Selected Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples Raymond James calculated for each of the transactions utilized.  *See* Recommendation Statement at 61.  For the same reasons mentioned above, the failure to disclose renders the summary of this analysis and the calculated enterprise value and adjusted EBITDA multiples materially

39.    In sum, the omission of the above-referenced information renders the Recommendation Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Expiration

Date, Plaintiff and the other members of the Class will be unable to make an informed decision regarding whether to tender their shares in the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

40.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41.     Defendants caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

42.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

43.     Defendants violated this clause of Section 14(e) because they negligently caused or allowed the Recommendation Statement to be disseminated to Black Box stockholders in order to solicit them to tender their shares in the Tender Offer, and the Recommendation Statement contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

44.     Defendants negligently omitted the material information identified above from the Recommendation Statement or negligently failed to notice that such material information had been omitted from the Recommendation Statement, which caused certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.  As directors and officers of Black Box, the Individual Defendants had a duty to carefully review the

12

Recommendation Statement before it was disseminated to the Company's stockholders to ensure that it did not contain untrue statements of material fact and did not omit material facts. The Individual Defendants were negligent in carrying out their duty.

45.     Black Box is imputed with the negligence of the Individual Defendants, who are each directors and/or senior officers of Black Box.

46.     As a direct result of Defendants' negligent preparation, review, and dissemination of the false and/or misleading Recommendation Statement, Plaintiff and the Class are impeded from exercising their right to seek appraisal on a fully informed basis and are induced to tender their shares and accept the inadequate Offer Price in connection with the Proposed Transaction. The false and/or misleading Recommendation Statement used to solicit the tendering of shares impedes Plaintiff and the Class from making a fully informed decision regarding the Tender Offer and is an essential link in consummating the Proposed Transaction, which will deprive them of full and fair value for their Black Box shares. At all times relevant to the dissemination of the materially false and/or misleading Recommendation Statement, Defendants were aware of and/or had access to the true facts concerning the process involved in selling Black Box, the projections for Black Box, and Black Box's true value, which is greater than the Offer Price Black Box stockholders will receive. Thus, as a direct and proximate result of the dissemination of the false and/or misleading Recommendation Statement Defendants used to obtain stockholder approval of and thereby consummate the Proposed Transaction, Plaintiff and the Class will suffer damage and actual economic losses (*i.e.*, the difference between the price Black Box stockholders receive and the true value of their shares) in an amount to be determined at trial.

47.     The misrepresentations and omissions in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares in the Tender Offer. In addition, a reasonable investor would view a full and accurate disclosure as having significantly altered the "total mix" of information made available in the Recommendation Statement and in other information reasonably available to stockholders.

/ / /

/ / /

CLASS ACTION COMPLAINT

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Black Box within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Black Box and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false and misleading statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Transaction.  They were thus directly involved in the making of the Recommendation Statement.

52.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class will suffer

14

CLASS ACTION COMPLAINT

damage and actual economic losses (*i.e.*, the difference between the price stockholders stand to receive and the true value of their shares) in an amount to be determined at trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.   Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.   Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

C.   Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.   Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.   Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

DATED:  October 30, 2018

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel:  212-971-1341
Fax:  212-202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

Respectfully submitted,

*/s/ David E. Bower*
David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
Email:  dbower@monteverdelaw.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT